CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 25, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JEREMY JAMES SKIDMORE,** ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 7:24-CV-00445 |
| ) | |
| v. ) | By: Hon. Robert S. Ballou |
| ) | United States District Judge |
| **MICHAEL SCHINKE,** *et al.,* ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION

Plaintiff Jeremy James Skidmore alleges that he was fired from his job by Defendants Michael Schinke and Gail Saul for raising issues about compensation in violation of Virginia public policy. However, his claim is not cognizable under Virginia's Bowman doctrine and is therefore futile. For that reason, Skidmore's motion to remand (Dkt. 2) is **DENIED**, and Defendants' motion to dismiss (Dkt. 4) is **GRANTED.**

    **I.**    **Factual and Procedural Background**

Skidmore worked for Sonoco for 28 years in Clifton Forge and Low Moor, Virginia. He filled numerous roles for the industrial packaging company and received only one write-up during his tenure. Skidmore alleges that, "in February 2022, [he] reported company violations regarding overtime compensation that were affecting [his] and other employees' compensation to [Defendant Michael] Schinke." Dkt. 1 ¶ 18. Schinke, a Production Supervisor, "was the sole supervisory authority physically present a the Low Moor plant….Schinke provided Skidmore with daily direction, had authority over…Skidmore's position in general…." *Id.* ¶ 15. "In response [to his complaint]" Skidmore asserts, "Schinke stripped Skidmore of his supervisory responsibilities." *Id.* ¶ 19.

Skidmore further alleges that, "on July 8, 2022, [he] sent a letter to Sonoco corporate managers including…[Defendant Gail] Saul" reporting…Schinke's managerial failures and violations of policy…." *Id.* ¶ 20. "[i]n early August 2022, [Sunoco] Senior Director of Regional Operations Richey visited the Low Moor plant and investigated Skidmore's report." *Id.* ¶ 23. "At the same time, Skidmore was interviewed by a Human Resources representative at the direction of management." *Id.* ¶ 24. Skidmore "complained… that he and others were denied compensation at Sunoco." *Id.* ¶ 26. He also disclosed the company's violations, his compensation, and the compensation of other employees to Human Resources. *Id.* ¶ 25. Skidmore alleges that Defendants suspended him on August 8, 2022, and terminated his employment on August 11, 2022.

Skidmore filed this single count *Bowman* claim in Alleghany County Circuit Court on May 20, 2024 alleging that Defendants violated Virginia's wage information protection statute, Va. Code Ann. § 40.1-28.7:9(A). Dkt. 1-1 at 5. Defendants Schinke and Saul, invoking this Court's diversity jurisdiction, removed the action on July 17, 2024. Skidmore moved to remand on July 26, 2024. Schinke and Saul filed a joint motion to dismiss on July 26, 2024. Both motions are fully briefed and pending before the Court.[1]

II.     **Skidmore's Motion to Remand**

Skidmore moves to remand the case to state court because the parties lack complete diversity. Schinke and Saul oppose remand, arguing that Schinke, a Virginia resident, was fraudulently joined to eliminate diversity. Defendants have shown that there is no possibility of a

---

[1] Skidmore filed a similar Complaint against Schinke and Sunoco in state court in July 2023. No.7:23cv464. Defendants removed the case to federal court. Skidmore voluntarily dismissed the suit the day before the hearing on the defendants' motion to dismiss. No.:7:23-cv-464, Dkt. 21.

2

viable claim against Schinke and have, therefore, satisfied the requirements of fraudulent joinder. Accordingly, the motion for remand is denied.

The Constitution provides that "the judicial power shall extend . . . to controversies between . . . citizens of different states." U.S. Const. art. III § 2 cl. 1. Congress has authorized federal courts to exercise diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). Of course, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011)(citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

Fraudulent joinder "provides an exception to the complete diversity requirement, allowing a district court to assume jurisdiction even if there are nondiverse defendants at the time of removal." *Evans*, 528 F. Supp. 2d at 602 (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir. 1993)). Despite its name, the doctrine "requires neither fraud nor joinder." *Id.*; *see also Mayes v. Rapoport*, 198 F.3d 457, 461 n.8 (4th Cir. 1999). Rather, it "is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 10003 (4th Cir. 1990) (emphasis in original). "This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 461 (4th Cir. 1999).

The removing party bears the burden to show that a nondiverse defendant has been fraudulently joined. *Id*. at 464. To do so, "the removing party must establish either: that there is

3

*no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall*, 6 F.3d at 232 (emphasis in original). The *Evans* Court aptly described the removing party's burden:

> "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. In fact, the fraudulent joinder standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Accordingly, a claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted."

528 F. Supp. 2d at 603 (internal quotations and citations omitted). Further, the court "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1004.

Here, there is no allegation of outright fraud so Defendants must show that there is *no possibility* that Skidmore would be able to establish a cause of action against Schenke in state court. Defendants make three arguments to this effect in its opposition brief and its motion to dismiss: 1) Virginia Code §40.1-28.7:9 does not support a *Bowman* claim as a matter of law; 2) Skidmore did not engage in conduct protected by §40.1-28.7:9; and 3) there are no allegations that Schenke was involved in terminating Skidmore. The first argument is dispositive. Because Va. Code. §40.1-28.7:9 cannot support a *Bowman* claim, there is no possible claim against Schenke in state court and the case should not be remanded.

Virginia law presumes that an individual's employment is at will—that the employment lasts for an indefinite term and can be terminated for almost any reason. *See Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 330 (Va. 1994). However, an at-will employee may challenge his termination if he was discharged in violation of public policy. *See*

4

*Bowman*, 331 S.E.2d 797, 801 (Va. 1985). The Supreme Court of Virginia has construed the *Bowman* exception to the at-will doctrine narrowly, explaining that "[w]hile virtually every statute express[es] a public policy of some sort, we . . . hold that termination of an employee in violation of the public policy underlying any one statute does not automatically give rise to a common law cause of action for wrongful discharge." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002) (internal quotations omitted).

The Supreme Court of Virginia has recognized three situations in which a discharged employee may show that the discharge from employment violated public policy: (1) where an employer violated a policy enabling the exercise of an employee's statutorily created right, (2) where the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy, and (3) where the discharge was based on the employee's refusal to engage in a criminal act. *Id.* A *Bowman* plaintiff must identify a source of Virginia public policy that fits into one of these three categories. *See Carmack v. Virginia*, 2019 WL 1510333, at *10 (W.D. Va. Apr. 5, 2019) ("[I]t is clear in Virginia that plaintiffs cannot cite federal statutes as the source of a public policy exception to the at-will doctrine.").

Here, Skidmore claims that Virginia's wage information protection statute, Va. Code Ann. § 40.1-28.7:9(A), is the basis for his *Bowman* claim. Enacted in 2020, this provision prohibits employers from terminating or otherwise retaliating "against an employee because the employee (i) inquired about or discussed with, or disclosed to, another employee any information about either the employee's own wages or other compensation or about any other employee's wages or other compensation or (ii) filed a complaint with the [Virginia] Department [of Labor and Industry] alleging a violation of this section." *Id.* No courts—Virginia or federal—have

addressed the issue of whether this nascent statute may provide the basis for a *Bowman* claim. Thus, the Court must predict how the Virginia Supreme Court would rule on the issue. *See Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir.2002)

Defendants argue that Va. Code § 40.1-28.7:9 cannot support a *Bowman* claim for three reasons: 1) it provides an exclusive remedy; 2) it does not establish Virginia public policy; and 3) it is unconstitutionally vague. I agree with Defendants that Va. Code §40.1-28.70 precludes a *Bowman* claim because it contains its own remedy provision. It is therefore unnecessary to address Schenke and Saul's other arguments.

Numerous Virginia courts have held that a statute containing an exclusive remedial scheme cannot serve as the basis for a *Bowman* claim. For example, in *Jenkins v. Heilig-Meyers Co.*, 57 Va. Cir. 448 (1998), the court held Va. Code § 40.21-51.2:2 did not support a *Bowman* claim because the statute permitted employees seeking redress to file a complaint with the Commissioner of Labor and Industry and then empowered the Commissioner to file a civil action on behalf of the employee. The *Jenkins* Court explained, "[i]f the termination is in violation of stated public policy, the law does not permit the aggrieved employee to pursue a common law remedy when a statutory remedy is clearly enunciated." Moreover, Virginia courts have specifically held that "[when] a statute creates a right and provides a remedy ..., then that remedy is exclusive unless the statute says otherwise," *Concerned Taxpayers of Brunswick Cty. v. Cty. of Brunswick*, 455 S.E.2d 712, 717-18 (Va. 1995).

Here, Va. Code § 40.1-28.7:9(B) – (C) describes the remedy for violating Va. Code § 40.1-28.7:9(A):

> B. Any employer that violates the provisions of this section shall be subject to a civil penalty not to exceed $100 for each violation. The Commissioner shall notify any employer who he alleges has violated any provision of this section by certified mail. Such notice shall contain a description of the alleged violation. Within 15

6

> days of receipt of notice of the alleged violation, the employer may request an informal conference regarding such violation with the Commissioner. In determining the amount of any penalty to be imposed, the Commissioner shall consider the size of the business of the employer charged and the gravity of the violation. The decision of the Commissioner shall be final. Civil penalties under this section shall be assessed by the Commissioner and paid to the Literary Fund. The Commissioner shall prescribe procedures for the payment of proposed penalties that are not contested by employers.
>
> C. The Commissioner or his authorized representative shall have the right to petition a circuit court for injunctive or such other relief as may be necessary for enforcement of this section.

On their face, these provisions do not contemplate alternative remedies. Thus, under Virginia law, they are the *exclusive* remedies for violations of Va. Code § 40.1-28.7:9(A). And, as a result, plaintiffs are precluded from asserting *Bowman* claims to enforce rights guaranteed by Va. Code § 40.1-28.7:9(A).

Skidmore argues that certain Virginia statutes have been found to support *Bowman* claims even though they contain remedial schemes. For example, he argues that courts have permitted plaintiffs to pursue *Bowman* claims under Va. Code § 40.1-29[2] even though the statute contains its own remedial scheme. Dkt. 11 at 8. However, Va. Code § 40.1-29 is distinct from Va. Code § 40.1-28.7:9. It expressly permits an individual seeking to vindicate rights under Va. Code § 40.1-29 to "bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees…against the employer in a court of competent jurisdiction to recover payment of the wages…." Thus, it is not an "exclusive" remedy and does not bar a *Bowman* action. On the other hand, Va. Code § 40.1-28.7:9 includes an exclusive remedy and therefore cannot support a *Bowman* action against *Schinke*. As a result, Defendants have carried

---

[2] Skidmore also asserts that his *Bowman* action is also based Va. Code § 40.1-28.7:9 and Va. Code § 40.1-29. Dkt. 11-4. However, there are no allegations regarding Va. Code § 40.1-29 in the Complaint. To the contrary, Skidmore alleges "But for Skidmore's [communications regarding salary], Defendants would not have terminated Skidmore employment."

7

the "heavy burden" required to establish fraudulent joinder, and the case should not be remanded to state court.

### III.     Motion to Dismiss

For the same reasons I find Schinke was fraudulently joined to defeat diversity jurisdiction, I dismiss the *Bowman* claim against both Defendants for failure to state a claim. Skidmore's claim is not viable because Va. Code § 40.1-28.7:9 provides an exclusive statutory remedy and precludes a *Bowman* action as a matter of law. Skidmore's Complaint is therefore dismissed.

### IV.     Conclusion

For the reasons stated above, Skidmore's motion to remand is **DENIED** and Defendants' motion to dismiss is **GRANTED**. Skidmore's action is **DISMISSED** without prejudice.

Entered:  March 25, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

8